### No. 154.

### NALLE & CAMMACK *v.* W. P. TERRIL, LEHMAN ABRAHAM & CO., INTERVENORS.

A factor advancing money for the raising of a crop and recording his claim for advances, as directed by Act 66 of 1874, in the parish where the crop was grown, has a "right of pledge" upon such crop, which protects him as against any other claimant even though said claimant may be in good faith and outside of the parish where the crop was grown.

*Joseph Brewer,* attorney.

*Braughn Buck & Dinkelspiel,* attorneys.

His Honor Judge Frank McGloin delivered the opinion and decree of the court in the words and figures following, to wit;

This suit has already appeared before this court as No. 12 upon its docket, and was disposed of by remandment; in as much as we considered that the case had never been placed at issue, so far as the defendant Terril was concerned. It has been tried a second time below, *de novo,* and as to all its issues, and the judgment of the lower court now coming up, is against the defendant for the debt, and in favor of intervenors, Lehman Abraham & Co., decreeing the latter to be the owners of the cotton attached and entitled to possession thereof. Plaintiff and appellant contend that the remanding was simply for the purpose of forming a *contestatio litis* as against defendant, and that all the issues as to intervenor, were closed by our opinion and decree.

It has been decided by this court in Harrison vs. Goddold, 1 McGloin 178, and such is the law, that in determining the question of *res adjudicata,* the decretal portion of the judgment alone, where it is not ambiguous, will be regarded. This principle, in general, furnishes a safe rule for the purpose of determining the effects of a remandment and ascertaining the scope which the second investigation in the lower court may take. In these, we may say this rule is, in such connection, an essential one for the plea now advanced by the plaintiff is in its nature one of *res adjudicata,* in as much as it practically

declares, that some, out of all the issues originally involved, have been put at rest by our first decree. To determine the effect of such original decree, it is manifest that it is the decree itself and not the opinion that is determinative; and that it alone must be consulted, if it be clean and free from ambiguity. Examining the final mandate of the court in that case, we find an unqualified reversal of the judgment appealed from; and a remandment without restriction.

Nor is there anything in the opinion itself, even were an appeal to it permitted, showing that our intention was to dispose of the controversy finally as to any one of the parties. On the contrary a regret is expressed on behalf of plaintiff that the cause had to be sent back, as we believed it to be with them on the merits; a regret which would have been misplaced, had we believed ourselves called upon or permitted to dispose of the cause in their favor, as against the only real contestant that opposed them.

The facts as presented in the record as now presented, do not materially differ from those which were then before us. Plaintiffs were the factors of Terril who was planting cotton in Morehouse Parish. Their claim for advances was duly recorded, as directed by the Act 66 of 1874, said recordation being in the office of the parish recorder of Morehouse parish. The balance due plaintiff was and is $890, as sued for and under the provisions of the aforementioned act, it bore a "right of pledge" upon the crop of defendant for the year during which the advances were made, to wit; in 1876. Of this crop thus charged in favor of Nalle and Cammack, 13 bales were unlawfully removed from the estate, upon which they had been raised, and brought into the City of Monroe, Ouchita parish, of this state, and sold by Terril or his representative Gilbert to one Simon Marx. By said Marx the cotton was subsequently shipped to New Orleans for account of Lehman Abraham & Co., intervenors, to cover their claim against the shipper in favor of the said consignees. In this city, it was sequestered by Nalle and Cammack, claiming their pledge, and Lehman Abraham & Co., by their intervention set up ownership.

We do not enter into the question of good or bad faith in favor of, or against Marx, for in our judgment this issue has no materiality in the case. The cotton seized is clearly identified as a portion of the crop raised by Terril, with the advances made by Nalle and Cammack. The latter firm had recorded their claim in strict accordance with the provisions of the Act 66 of 1874, in the parish of Morehouse, and we do not think their pledge can be defeated by any surreptitious removal their debtor might make of the property affected to another parish. This state is divided into a number of parishes, into any of which the removal of personal property, would be a matter of no difficulty. In order, therefore, to be secure, a plaintiff with privilege, or pledge would be compelled to make 56 recordations, one for every parish. We do not think the constitution of 1868, or the legislatures of 1869 and 1874, intended to impose any such hardship upon the privileged creditor. Act 95 of 1869, section 8, carrying out the intendment of Art. 123, Const. 1868, simply requires the inscription of mortgages and privileges in the mortgage book of the parish where the mortgageable property is situated. The law contemplated but one recordation and the use of language of the present—is situated—and connected therewith, implies clearly, that it is the situs of the property, at the moment of the inscription that determines. Had the legislative intention gone beyond this, and to the extent contended for by the intervenors, it would have been expressed by words of the future as well as of the present; for instance; "is or may be situated." In former days slaves were held as real property, and titles thereto were to be registered, and mortgages, upon them, inscribed. It has never been contended that a title once inscribed where the slave was acquired or wherein was his domicile, or a mortgage once similarly recorded, where ineffective in a neighboring or other parish to which he might be removed by stealth or for some other temporary purpose.

But, if under the general laws of recordation there should be difficulty, surely the special law applicable to this case, and formulated in Act No. 66 of 1874 leaves no doubt. The title

of the act is, "To enable planters, etc., to pledge and pawn cotton, sugar, etc., to merchants, factors, etc." This section specially authorized such pledging, or pawning, to secure advances in money, goods and necessary supplies, that may be required by the planter or farmer for the production of the agricultural product to be effected. The formalities required to create such pledge or pawn and to preserve it, are the execution of a written instrument, and the recordation of the instrument "in the office of the recorder of mortgages of the parish where such cotton, sugar, or other agricultural products are produced." It is certainly not permissible to add other exactments to the text of this statute, thereby compelling the pledgee to record in other parishes besides the one where the agricultural product "is produced."

The same section proceeds as follows;—"Which recorded contract shall give and confer on the merchants, or other person advancing money, goods and necessary supplies for the production of said agricultural product a right of pledge upon the said crop, the same as if said crop had been in the possession of the pledgee, etc."

It is evident that this law places the particular contract under consideration upon a footing something like that of a lease. The debtor is permitted to remain in corporeal possession but the legal possession is in the creditor. In other words, either the recordation stands for the creditor's possession, or the debtor, in his actual possession, serves in his detention as the agent of the pledgee so far as the right of the latter requires the same. In either aspect of the case, it is evident that the planter cannot lawfully remove the property affected, nor can any one derive a title from his wrongdoings of this nature. If Terril was the detaining agent of the pledgee, he certainly could not sell to the prejudice of his principal, any more than could any other mere keeper of pledged property confer a valid title to the property so left in his custody. If, on the other hand, the simple recordation in the Parish of Morehouse stood Nalle and Cammack in lieu of actual possession, Terril had no more authority to unlawfully display such constructive

Nalle & Cammack vs. Terril, Abraham & Co.

possession or dispose of the cotton affected than one who was an entire stranger. To hold that Marx acquired, whether in good or bad faith, an unimpeachable title, would be to determine, that any theif who may purloin property from the possession of one holding the pledge, may dispose of it to the prejudice of such innocent pledgee.

The law cannot preserve purchasers from every risk however free they may be from *mala fides* of any nature. The right of property is sacred and must be respected. It cannot be divested except by the consent of the proprietor or its equivalent, or by due process of law. These essential elements are not to be supplied as contended for in this case by the innocence of a purchaser, when the title of the latter is based upon an act of spoilation in breach of faith, unaccompanied by any estoppel against the true owner.

The judgment in this case should have been in favor of the plaintiff and against the intervenors and it is accordingly reversed as between said parties and now rendered in favor of said plaintiff, Nalle and Cammack, and against the intervenors, Lehman Abraham & Co., with costs; and in all other respects it is affirmed; with privilege upon the property sequestered.

ON APPLICATION FOR REHEARING.

His Honor Judge Walter H. Rogers delivered the following opinion and decree of the court;

Upon the application of counsel, it is suggested that the questions involved in this controversy are of great importance affecting the commercial relations between the purchasers and producers of cotton, and sugar, we granted an oral argument on the motion for a rehearing. It is alleged that the construction put upon the act of 1874 by us, was too comprehensive, and jeopardized, if indeed, did not virtually destroy a most important feature in commercial industry; that no one could purchase cotton or sugar in security, and the laws of trade which at all times, meet with the greatest favor, are virtually nullified. In addition to what we have already said in determining the issues in this case, it is equally cogent that while

placing a condemnation upon all laws and conventions in re-
straint of trade—courts and the laws which they apply, have
reference to honest traffic—not honest with particular refer-
ence to the parties engaged, but in all the relations fixed by
law and it will not suffice to urge the bona fides of a transac-
tion because one sells and another buys in the ordinary course
of trade, when a public statute enacted on the soundest grounds
of general policy, has unequivocally declared a purpose to pre-
serve the sacredness of property and credit. Simon Marx
when he purchased the property from Green as the agent of
Terril knew of the existence of the law which gave to Nalle
and Cammack, as merchants, a pledge upon the crop grown
upon the plantation. He could not plead ignorance of it—
the recordation of the pledge was a notice to the world, and
when Marx purchased the cotton, without inqury, he assumed
a responsibility and took a risk, which inevitably springs from
a violation of law. To hold otherwise would make the statute
meaningless. We adhere therefore to the opinion expressed
by us.

Our attention has been called to two matters which are sub-
mitted by counsel. They are; 1st., the refusal by the district
judge to confirm the judgment by default as to Terril; this
the plaintiff is entitled to. 2nd., the amount due for the 13
bales of cotton which had been sold is fixed by the account
rendered by the intervenors at          dollars, it is for this
amount plaintiffs claim in argument that they should have
judgment. We find no prayer or pleading justifying such a
decree and therefore can do no more than dismiss the inter-
vention leaving plaintiffs to their recourse against the cotton,
or the proceeds if still in the custody of the court, or against
the bond if it be so represented.

In order therefore to enter the proper judgment, it is now
ordered that our previous decree be set aside, and it is now
ordered, adjudged and decreed that the judgment of the dis-
trict court be annulled, reversed, and avoided, that the judg-
ment by default entered against the defendant W. P. Terril
be confirmed and made final, and that the plaintiffs, Nalle and

Cammack, do have judgment against W. P. Terril for the sum of $894.21 with 8% interest and costs, as prayed for in their original petition.

It is further ordered, adjudged and decreed that plaintiffs, Nalle and Cammack, have judgment against Lehman Abraham & Co., intervenors, dismissing their intervention with a reservation of all rights of entiré against the cotton herein sequestered, the proceeds of the sale thereof, or upon the bond or bonds by which it may be represented, if any—costs of both courts to be paid by intervenors.